**STATE OF WEST VIRGINIA**

**FILED**
**September 23, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **A.R., H.R. Jr., and Z.B.**

**No. 20-0245** (Kanawha County 19-JA-548, 19-JA-549, and 19-JA-550)

## MEMORANDUM DECISION

Petitioner Mother N.R., by counsel Kenneth Starcher, appeals the Circuit Court of Kanawha County's February 18, 2020, order terminating her parental rights to A.R., H.R. Jr., and Z.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Jennifer R. Victor, filed a response on behalf of the children also in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed a child abuse and neglect petition against the parents in September of 2019 based upon allegations of domestic violence. Specifically, the DHHR alleged petitioner filed for a domestic violence protective order ("DVPO") against the father on or around August 26, 2019, but subsequently dismissed the DVPO and allowed the father back in the home. A few days later, the DHHR received a referral that the father poured gasoline on petitioner, held out a lighter, and threatened to set her on fire while in the children's presence. The father also, while outside the home, pushed a window air conditioning unit into the home, reached inside and grabbed petitioner by the hair, and attempted to drag her through the window. Additionally, the father attempted to strangle petitioner on more than one occasion. In fact, petitioner had previously filed and withdrew two other DVPOs against petitioner. The children reported that they did not feel safe with the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

father and were afraid to go home. The DHHR also alleged that the home was infested with roaches and that the children had lice. Petitioner waived her preliminary hearing.

The circuit court held an adjudicatory hearing in October of 2019, wherein the circuit court noted that it had received petitioner's drug screen results showing that she tested positive for methamphetamine and tetrahydrocannabinol ("THC"). Petitioner stipulated to the allegations contained in the petition. Specifically, petitioner stipulated that her home was not suitable for human habitation, that she had a substance abuse problem that negatively impacted her parenting abilities, and that she failed to follow through with maintaining DVPOs against the father despite the domestic violence that occurred in the home in the presence of the children. The circuit court accepted petitioner's stipulation, adjudicated her as an abusing parent, and ordered that she participate in services. The services included parenting and adult life skills classes, random drug screens, supervised visitation, domestic violence counseling, substance abuse treatment, and a psychological evaluation.

In January of 2020, the circuit court held a dispositional hearing. A Child Protective Services ("CPS") worker testified that she recommended termination of petitioner's parental rights. The CPS worker stated that petitioner had made no progress with services and was dishonest during her psychological evaluation. The CPS worker testified that, during the psychological evaluation, petitioner stated that "everything was wonderful before CPS came in and ruined everything" and failed to disclose the deplorable home conditions and domestic violence. The CPS worker claimed that petitioner did not understand the severity of the domestic violence and failed to appreciate the effect the domestic violence in the home had on the children. A service provider testified that petitioner had complied with services but lacked insight into the problems of abuse and neglect.

Petitioner testified that she recognized the issues of abuse and had taken steps to remedy the same. Specifically, petitioner testified that she filed for divorce and obtained her own housing, participated in therapy and domestic violence classes, and submitted to random drug screens. Petitioner admitted to testing positive for THC and methamphetamine at the beginning of the case but claimed that all her recent screens had been negative. Petitioner also admitted to lying during her psychological evaluation about the issues of domestic violence but stated that she "blocked it out as a coping mechanism." After hearing evidence, the circuit court found that petitioner refused to acknowledge the father's severe and life-threatening acts of domestic violence and refused to protect the children from it. The circuit court further found that, despite the DHHR's having provided several services, petitioner failed to participate adequately and failed to benefit from the services. The circuit court also found that petitioner's testimony was not credible. Ultimately, the circuit court terminated petitioner's parental rights upon finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was in the children's best interests. Petitioner appeals the February 18, 2020, dispositional order terminating her parental rights.[2]

---

[2] The circuit court also terminated the parental rights of the father of A.R. and H.R. Jr. The permanency plan for A.R. and H.R. Jr. is adoption by their foster parents. The father of Z.B. was deemed a non-abusing parent and the permanency plan for Z.B. is to remain in his care.

The Court has previously established the following standard of review in cases such as this:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights when she demonstrated that she was capable of being a proper parent to her children. According to petitioner, she divorced the children's father, thereby eliminating the children's exposure to domestic violence in the home. Additionally, petitioner enrolled in therapy, submitted several negative drug screens, and secured housing and employment. Petitioner claims she was the victim of domestic violence and that she is being "re-victimiz[ed]" by not having her children returned to her care.

West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d)(3) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when

[t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child[.]

The record establishes that petitioner failed to follow through with rehabilitative efforts designed to prevent the abuse or neglect of the children. Although it is true that petitioner consistently attended her services, petitioner failed to demonstrate that she gained any insight into her behavior or remedied the circumstances the led to the petition's filing. Testimony established that petitioner denied any issues with domestic violence during her psychological evaluation and claimed that "everything was wonderful before CPS came in and ruined everything." Petitioner also minimized the extent of the domestic violence to her service provider. We have previously held that

3

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Here, petitioner's continued denial and minimization of the issues of domestic violence in the home resulted in making the issues of abuse untreatable. Based on the evidence set forth above, it is clear that there is no reasonable likelihood that petitioner can substantially correct the conditions of abuse and neglect in the near future. To the extent petitioner claims a less-restrictive alternative to the termination of her parental rights should have been granted, we have previously held that

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on the foregoing, we find no error in the circuit court's termination of petitioner's parental rights as there was sufficient evidence to find that there was no reasonable likelihood that she could correct the conditions of abuse and/or neglect in the near future and that termination of her parental rights was in the children's best interests.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 18, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: September 23, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

4